CEFERINO VARGAS VARGAS, ETC., ET AL., Plaintiffs and Appellants, *v.* BELTHOR CÁCERES CORPORATION ET AL., Defendants and Appellees.

No. R-62-190.      Decided February 10, 1964.

*Ariel Colón Clavell* for appellants. *F. Fernández Cuyar* for appellees.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

Mr. Justice Santana Becerra delivered the opinion of the Court.

This is an action for damages sustained in an automobile accident. In the amended complaint it was alleged that on June 27, 1961, the plaintiff minor was traveling in a 1961 Volkswagen delivery wagon owned by defendant Belthor Cáceres Corporation and operated by Roberto Torres Torres; that as a result of the latter's negligence the vehicle crashed into a tree and the minor sustained injuries; that when the accident occurred Roberto Torres Torres was discharging his duties as employee of Belthor Cáceres Corporation and the injured minor was performing functions for the benefit of this corporation; and that codefendant U.S. Fire Insurance Co. was the insurer *of the automobile* described and the policy covered accidents such as the one which occurred herein.

Defendants admitted in the answer that on June 27, 1961, plaintiff minor was traveling in the said vehicle operated by Roberto Torres Torres; that when the accident occurred the latter was acting in the course of his duties as employee of Belthor Cáceres Corporation, and admitted that defendant U.S. Fire Insurance Co. was the insurer of *that vehicle* and that the policy covered accidents of this nature. They denied that the operator was negligent and that the minor was performing functions for the benefit of the corporation.

The uncontroverted evidence appearing on record shows that Torres had been employed by the corporation for about two months prior to the accident. That his work consisted in selling merchandise and delivering the same to the customer immediately, for which purpose he carried the merchandise in the vehicle. Approximately one or one and one-half months prior to the accident, Torres used to take plaintiff minor along with him every day to help him with his

work. The help consisted in staying in the wagon watching the merchandise while Torres upon arriving at a store left the vehicle in order to make a note with his customer of the articles desired. After that the minor delivered the articles purchased to the customer. Torres paid the minor for this work from his own money. That day, as they drew near Patillas, Torres turned on a curve which was round like a half moon on its left-hand side at about 35 to 40 miles per hour. All of a sudden a bus appeared from the opposite direction, the driver "had to swerve to the right and they collided." As a result the minor sustained several small cuts on his face with the glass and also, according to the description made by the trial court for the record, he had a scar on the right eyebrow extending upward about one and one-fourth or one and one-half inches long which was clearly perceptible, his face having been marred by that scar. "Other scars on the left side of the forehead which extend downward from the place where the hair grows out, which are also visible. It [*sic*] is about one inch long." The minor was treated in the hospital of Patillas where they took 13 stitches, but he was not hospitalized.

The record shows that on several occasions, at the end of the day's work, Torres used to drive the minor to the premises of the corporation where the merchandise was kept, rendered accounts and then took him home. Also, that some times the minor went for Torres to the premises of the company at the commencement of work and there he got on the wagon. No one called the minor's attention because of his presence in the vehicle, although the record shows that the executives of the corporation were never in contact with him and only learned of his activities after the accident. The corporation offered oral evidence in the sense that the salesmen and Torres had instructions not to permit passengers

to ride in the vehicle, not to have assistants and to report every afternoon to the office.[1]

In its findings of fact the trial court did not make any specific determination as to whether or not Torres had been negligent. In its conclusions of law it dismissed the complaint. It considered that Torres lacked express or implied authorization to invite or permit plaintiff to ride in his employer's vehicle; that this had been expressly prohibited to him; that "Where the operator of a vehicle, without his employer's authorization and against the latter's express orders, invites another person to ride with him and as a result of an accident sustained by the vehicle the invitee is injured, the owner is not liable. *Martínez* v. *U.S. Casualty Co.*, 79 P.R.R. 561, 567; *Rivera* v. *Maldonado*, 72 P.R.R. 448; 5 Blashfield, Cyclopedia of Automobile Law and Practice 311, § 3016 (perm. ed.)"; and that this doctrine applies equally in the case of persons whom the employee asks to help him in his tasks or work. Under such circumstances, the employer in this case was not liable for the damages sustained by plaintiff and dismissed the action.[2]

It seems, under the circumstances of the case, that the ruling in *Martínez* v. *U. S. Casualty Co.*, cited by the trial court, is no bar to this cause of action. Precisely in *Martínez*, in which the driver of a municipal ambulance was authorized to transport a sick woman from the house to the hospital and afterwards transported her husband to a drugstore to

---

[1] Torres died several weeks after the occurrence when he was no longer an employee. The minor was within two months of attaining 16 years of age.

[2] Codefendant U.S. Fire Insurance Co. admitted that it was the insurer *of the automobile* and that it covered the accident. The policy was not presented in evidence and we cannot determine whether or not, under the clauses thereof, the insurer of the vehicle operated by a person authorized by its owner could be held liable for the acts of Torres as an additional insured, irrespective of the enterprise's liability as employer for the acts of its employee. *Cf. Pérez* v. *Maryland Casualty Co.*, 78 P.R.R. 453, 461 (1955); *The Conjugal Partnership, etc.* v. *Cruz*, 78 P.R.R. 335, 340 (1955); *Sánchez* v. *Soler*, 87 P.R.R. 409 (1963).

get the medicine prescribed, and in the course of this function caused his death as a result of a collision, we held, citing from *González* v. *Cía. Agrícola*, 76 P.R.R. 373 (1954), that "the essential point is to determine whether the agent's intention in performing such act, or at the time of the accident, was to serve and protect the interests of his employment and not his own interest, and whether the action is incidental to an authorized act, that is, where there is a reasonable and pertinent relation between the agent's act and the principal's purposes, and whether the agent's act tends reasonably to carry out the ultimate objective of the principal." In *Martínez* it was held that the action of the driver had a reasonable and pertinent relation to the interests of the municipality, since it tended to carry out the ultimate objective of the municipality which is to provide the best public-charity service to the community.

And in *Rivera* v. *Maldonado*, the other case cited by the trial court, we said citing *Acosta* v. *Crespo*, 70 P.R.R. 223 (1949) (p. 451): ". . . If a pedestrian had been hit by the car while the chauffeur was driving it on such an errand, he could recover damages. But if the chauffeur takes along as his own guest someone *whom he does not need to assist him to accomplish his errand*, the owner is not liable for injuries to the guest caused by the chauffeur's negligence in operating the car." (Italics ours.) In this case the driver, employee of an enterprise, invited and permitted in the vehicle a person who died as a result of injuries sustained through the driver's negligence. After making an analysis on the doctrines involved, we said at p. 455: "The difficulty in applying the exception to the general rule in Puerto Rico is that we would be extending the limits of § 1803, which only renders liable the owner of an enterprise for the negligent acts of his employees 'on account of his duties' to those personal acts of the employee—here the chauffeur's invitation

to Juan Rivera to get in the truck—as if said personal acts formed part of the duties which the employee has to discharge in the course of his employment. *It was neither alleged nor proved that the chauffeur's invitation to Juan Rivera to get in the truck was in order to perform any task for the benefit of the owner thereof.* We must not, therefore, by judicial interpretation enlarge the scope of the master's liability beyond the provisions of § 1803, *supra.*" (Italics ours.)

■■ The facts in *Maldonado* are clearly distinguishable from those in the instant case; the minor herein was not a mere "invitee" within the meaning of this term in the field of torts and for the purposes of exacting liability. It is clear that, unlike that case, the facts herein show that the action of Torres, even without authorization or in violation of the instructions, in using the minor to help him was performed in the course of his duties and not for a personal act not incidental to his employment and unquestionably for the benefit of the employer in the long run. As stated in *Martínez, supra,* and as already stated on previous occasions, this is the rule to be followed and not whether or not the employee acted with authorization, provided the act is incidental to the function. However, in addition to the foregoing we must say that *Rivera* v. *Maldonado* was decided on the authority of § 1803, as amended by Act No. 120 of May 12, 1943 (Sess. Laws, p. 372), on the aspect of the liability of the owners and directors of an establishment or enterprise for the damages caused by their agents in the service of the branches in which they may be employed or in the course of their duties, in order to hold liable also the owners of any motor vehicle devoted to the private service of its owner for the damages caused in the operation thereof by their employees or agents duly authorized to operate such vehicles, and in the course of their duties as such agents or employees, in accordance with the terms of the employment contract. This provision was part of § 1803 until June 29, 1955 when it was elimi-

nated by Act No. 104 of that year (Sess. Laws, p. 550). However, Act No. 120 of 1943 also inserted the same provision in the Automobile Law as § 14-A thereof, which was in force since then and until July 20, 1960 when Act No. 141 of that year (Sess. Laws, p. 408) was enacted—§ 13-101.

■ ■ Under the circumstances in the record before us, the corporation cannot be excused from liability under our state of law. *Martínez* v. *U.S. Casualty Co.*, *supra*; *González* v. *Compañía Agrícola*, 76 P.R.R. 373, 375 (1954) : "The fact itself, isolated and independent, that the driver, in causing the accident, was violating the specific instructions of his employer or was acting in a manner expressly forbidden by the employer, does not excuse the latter from liability. . . . Of course, although the prohibition of a certain act is not an exclusively controlling factor, it may be relevant in determining whether the agent's act is incidental to the employment [citation]. For the purpose of ascertaining whether a certain act has been done within the scope of the employment, the essential point is to determine whether the agent's intention in performing such act, or at the time of the accident, was to serve and protect the interests of his employment and not his own interest, and whether the action is incidental to an authorized act." *Vázquez* v. *People*, 76 P.R.R. 556, 560 (1954) ; *Rodríguez* v. *People*, 75 P.R.R. 377, 384 (1953), criminal act of an employee; *Lloréns* v. *Lozada*, 73 P.R.R. 260, 264 (1952) ; *Maysonet* v. *Heirs of Arcelay*, 70 P.R.R. 155, 160 (1949), reckless, wilful, intentional, wanton and malicious acts of an employee committed in the course of employment with a view to the *furtherance* of his employer's business; *Acosta* v. *Crespo*, 70 P.R.R. 223, 232 (1949) ; *Díaz* v. *Rodríguez*, 69 P.R.R. 495 (1949). *Cf. Torres* v. *J. Lema & Co.*, 36 P.R.R. 72 (1926) ; *Méndez* v. *Blanes, S. en C.*, 47 P.R.R. 384 (1943) ; *Burgos* v. *Sobrinos de Villamil*, 41 P.R.R. 85 (1929). Even if the acts were unauthorized,

the corporation was liable under § 1803 *"in eligendo"* and also *"in vigilando."*

However, § 1803 of the Civil Code is not the only applicable provision to the question of liability of defendants. Section 13-101 of Act No. 141 of July 20, 1960—Vehicle and Traffic Law of Puerto Rico—provides that the owner of *any* motor vehicle shall be liable for damages and losses caused through guilt or negligence by *operation* of such vehicle when *operated* by or in the possession or under the control of *any person* who, for the main purpose of operating it, or of having or allowing it to be operated by a third person, *obtains possession thereof* by *express or tacit authorization* of its owner. This provision was in force at the time of the occurrence of the accident in this case. It differs fundamentally from the former statutory precept—Act No. 120 of 1943—and the corporation and its insurer could hardly be excused from liability. This provision does not require that the operator be an employee, it says "any person," nor that the vehicle be operated in the course of employment. As to accidents occurring subsequent to July 20, 1960, such as that herein, rulings such as that in *Rivera* v. *Maldonado* and other cases of this Court cited by the trial court to the effect that the owner is not liable when the operator of a vehicle invites another person and causes damages, should be evaluated without disregarding the Act in force at present. According to § 13-101 which governs the case, the owner who authorizes a person to operate his vehicle also assumes the risk that the operator may invite or permit a third person in the vehicle. See *Cordero Santiago* v. *Lizardi Caballero*, 89 P.R.R. 148 (1963).

Defendants cite decisions of the American courts in order to point out that provisions similar to § 13-101 have been restrictively construed. The fact is that under our civil system of our § 1803 this Court has always taken a more stringent position of the principal's liability than in other

common-law jurisdictions. The reason for the restrictive construction of those courts is that they consider that statutes such as § 13-101 repeal the common law and should therefore be restrictively applied. We do not have that problem in our civil system. Furthermore, if the text of the statute should leave any doubt as to its interpretation, it will suffice to consider the purposes which the lawmaker had in mind when adopting it, as they appear from the legislative history of this section of the Vehicle and Traffic Law, particularly the reference to the decisions in *Díaz* v. *Iturregui*, 72 P.R.R. 191 (1951); *Usera* v. *González*, 73 P.R.R. 454 (1953); *Kirchberger* v. *Gover*, 76 P.R.R. 851 (1954). 13-5 Journal of Proceedings 2301.

█ Defendants being liable at law, we must determine the amount of damages. The trial court made no conclusion as to whether or not the driver was negligent. On the record before us we hold that he was, and that plaintiff minor is entitled to $4,000 compensation. As to the second cause of action, mental anguish and moral suffering of the minor's parents, the mother testified: "And how did the accident of this child affect you, if it affected you at all? Well, that day I went to the district hospital. I was pregnant, expectant; when I arrived at the hospital and saw him bandaged all over, I passed out. I said to myself: perhaps . . . He said to me . . . mammy, you don't know what happened to me . . . we had a collision . . . How did you feel? I was dazed when I saw him like that, I thought, well . . . Then, Your Honor, he told me not to worry, that it had been a collision. That it had been a collision. I felt bad." We have consecrated in § 1802 the right to compensation by reason of mental and moral suffering, and a plaintiff is not bound to establish the same quantitatively since judges are beings sensible to those things. Although the record does not show considerable moral suffering, the parents in this case experienced them nonethe-

less. On the basis of the evidence, compensation is fixed at $500.

For the reasons stated above, the judgment dismissing the complaint for damages will be reversed and another rendered instead by this Court ordering defendants to pay solidarily to plaintiff minor the sum of $4,000 for his injuries, $500 to the minor's parents, plus the sum of $500 for attorney's fees in the trial court.